UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

RAE'QUIN R. SCOTT,

                    Plaintiff,                        Case No. 1:23-cv-11892

v.                                                    Honorable Thomas L. Ludington
                                                      United States District Judge
CITY OF SAGINAW, et al.,

                    Defendants.
_____/

**ORDER GRANTING DEFENDANTS OSWALD, MYERS, AND ATHA'S JOINT
MOTION TO DISMISS, AND DISMISSING CLAIMS AGAINST THEM WITH
PREJUDICE**

Plaintiff Rae'Quin Scott was shot a total of six times by Officer Jonathan Beyerlein and

Officer Julian Guevara on August 5, 2021. Two years after the shooting, Plaintiff sued both officers

who shot him, the City of Saginaw, and twelve additional officers present at the scene. Plaintiff

alleges Officers Beyerlein and Guevara employed excessive force in violation of the Fourth

Amendment, and that the other twelve Officer Defendants are liable for their failure to intervene.

Plaintiff additionally alleges that the City of Saginaw is liable as a municipality under *Monell*.

Although most Defendants filed answers, Officer Andrew Myers, Officer Matthew Oswald, and

Officer Jarrod Atha filed a joint motion to dismiss under Civil Rule 12(b)(6). Because these three

officers did not shoot or employ any force against Plaintiff, and because they could not plausibly

have intervened to prevent the "lightning quick" shooting which occurred only a "few seconds"

after all Officer Defendants arrived on scene, their Motion to Dismiss will be granted.

**I.**

As alleged in the Complaint, at around 6:30 AM on August 5, 2021, 14 police officers

executed a no-knock search at 814 South Harrison Street in Saginaw, Michigan (the 'South

- 1 -

Harrison House"). ECF No. 1 at PageID.7. The officers forced opened the front door and immediately tossed a flash grenade[1] into the living room, where 17-year-old Plaintiff Rae'Quin Scott was sleeping after a night spent playing video games with his friend, who lived in the South Harrison House. *Id.* at PageID.6–7. Within seconds, Officer Jonathan Beyerlein shot Plaintiff— who was unarmed—five times with an AR-15 assault rifle. *Id.* at PageID.7. And seconds later, Officer Julian Guevara shot Plaintiff a sixth time, in the back, using a 9mm handgun. *Id.* Although Plaintiff survived, some of the shots damaged his spinal cord such that Plaintiff currently suffers from paraplegia and has lost the use of his right leg. *Id.* at PageID.8.

But Plaintiff's Complaint omits and contradicts several relevant, publicly reported facts. *See Bassett v. Nat'l Collegiate Athletic Ass'n,* 528 F.3d 426, 430 (6th Cir. 2008) (noting district courts may properly consider the public record when deciding Civil Rule 12(b)(6) motions to dismiss so long as the information considered is "central to the claims" contained within plaintiff's complaint). Indeed, prior to the August 5, 2021 search, the Bay Area Narcotics Enforcement Team (BAYANET)[2] made several controlled buys of drugs from the South Harrison House and observed people coming in and out of the House with AR-15 rifles and handguns with extended magazines. Cole Waterman, *Saginaw Teen Shot by Police During Drug Raid Convicted of Firearm Offense, Jury Hung on Assault Charge*, MLIVE (May 2, 2023, 1:27 PM), https://www.mlive.com

---

[1] A flash grenade, also known as a "flash-bang" or a "stun grenade" is "an explosive device" "that is thrown by hand" and  "produces a binding flash of light and a sudden, loud noise intended to temporarily stun, distract, and disperse people." *Flash-bang*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/flash-bang#:~:text=plural%20flash%2Dbangs%20 or%20flash,thrown%20by%20hand%20or%20projected (last visited June 12, 2024) [https://perma.cc/X5RL-MLK8]; *see also* Joseph Rychlak, *"Good Time Had by All": Regulating Police Use of Flash-Bang Grenades in the Execution of Search Warrants*, 87 MISS. L.J., 81, 104 (2018) (noting flash-bangs "can, and have led to many serious, life threatening injuries").

[2] BAYANET is "a multijurisdictional taskforce overseen by the Michigan State Police." *Murphy v. May*, No. 1:21-CV-12089, 2022 WL 275502, at *1 (E.D. Mich. Jan. 28, 2022).

/news/saginaw-bay-city/2023/05/saginaw-teen-shot-by-police-during-drug-raid-convicted-of-firearm-offense-jury-hung-on-assault-charge.html [https://perma.cc/N3 SL-XAHH] [hereinafter Waterman I]. The South Harrison House was also the target of several drive-by shootings. *See id.*

The Officer Defendants were members of the Saginaw Emergency Services Team (EST), a group which secures high-risk spaces before they are searched by others. *id.* Importantly, Officer Beyerlein claimed that the Officer Defendants announced their presence before entering the South Harrison House on August 5, 2021. *Id.* Officer Beyerlein also claimed that he shot Plaintiff only because, after the flash grenade was thrown, Plaintiff drew a handgun with a mounted flashlight and aimed it at Officer Beyerlein and a nearby Officer Defendant. *Id.*

The August 5, 2021 search uncovered 19 grams of suspected crystal methamphetamine, 1 gram of "heroin/fentanyl," an AR-15, a Glock 9mm semi-automatic handgun, three digital scales, ammunition, and $896 in cash on Plaintiff's person. *Id.*

On February 7, 2022, state prosecutors announced that they would not pursue criminal charges against Officers Beyerlein and Guevara because, after investigation, they concluded the officers "were justified" in employing deadly force during the August 5, 2021 search. *Id.*; *see also* Cole Waterman, *Saginaw Teen Shot by Police in August Drug Raid Recently Arrested in Another Drug House, Officers Say*, MLIVE (Feb. 23, 2022, 1:26 PM), https://www.mlive.com/news/sagin aw-bay-city/2022/02/saginaw-teen-shot-by-police-in-august-drug-raid-recently-arrested-in-another-drug-house-officers-say.html [https://perma.cc/JL6C-JNRW] [hereinafter Waterman II] (noting a Saginaw County Prosecutors Office press release which stated "'[t]his office has reviewed the witness statements, video, and audio recordings of the incident, as well as all other available evidence. We conclude that the use of deadly force in these circumstances was justified.'") The next day, a warrant was issued for Plaintiff's arrest. Waterman I.

On February 16, 2022, Plaintiff was arrested at another Saginaw house, on Green Street, (the "Green Street House") which BAYANET was searching as part of an unrelated drug investigation. *Id.* Notably, jail records listed the Green Street House as Plaintiff's residential address. *Id.* Plaintiff was arrested without incident, and officers uncovered "heroin, cocaine, crystal methamphetamine, and a stolen handgun" from the Green Street House. Waterman II.

Plaintiff was charged for his conduct at the South Harrison House on August 5, 2021—not his presence in the Green Street House on February 16, 2022. *Id.* Specifically, Plaintiff was charged with one count of felonious assault and one count of felony firearm. *See id.* After a jury trial in April 2023, Plaintiff was convicted of the latter, less serious, charge. *Id.* But, in July 2023, Saginaw County Circuit Judge Julie A. Gafkay granted Plaintiff a new trial due to "clear juror confusion and potential compromise with the application of the law." Cole Waterman, *Judge Orders New Trial for Saginaw Teen Shot by Police During Raid, Finds Jury was Confused*, MLIVE (July 20. 2023, 11:48 AM), https://www.mlive.com/news/saginaw-bay-city/2023/07/judge-orders-new-trial-for-saginaw-teen-shot-by-police-during-drug-raid-finds-jury-was-confused.html [https://perma.cc/MU8T-GE8Y]. It is unclear when Plaintiff's new trial will begin and whether any other potentially relevant factual developments have occurred since July 2023.

In August 2023, separate from his state criminal proceedings, Plaintiff initiated the instant federal civil proceedings and sued (1) the City of Saginaw; (2); Officer Jonathan Beyerlein; (3) Officer Julian Guevara; (4) Officer Oscar Lopez; (5) Officer Matthew Oswald; (6) Officer Anthony Teneyuque; (7) Officer Robert Adams; (8) Officer Jarrod Atha; (9) Officer Andrew Meyers; (10) Officer Jeremy Holden; (11) Officer Philip Halverson; (12) Officer Matthew Carpus; (13) Officer Jordan Englehart; (14) Officer Ervin Ward; and (15) Officer Jeffrey Roberts. ECF No. 1. Plaintiff's eight-count Complaint alleges the following:

| Count | Claim | Defendant(s) |
|-------|-------|--------------|
| I | Fourth Amendment Excessive Force; 42 U.S.C. § 1983 | (1) Beyerlein; (2) Guevara |
| II | Fourth Amendment Excessive Force; *Monell* municipality liability | City of Saginaw |
| III | Fourth Amendment Excessive Force (Failure to Intervene);[3] 42 U.S.C. § 1983 | (1) Lopez; (2) Oswald; (3) Teneyuque; (4) Adams; (5) Atha; (6) Meyers; (7) Holden; (8) Halverson; (9) Carpus; (10) Englehart; (11) Ward; and (12) Roberts |
| IV | Fourth Amendment "Failure to Train and Supervise;"[4] 42 U.S.C. § 1983 | All Defendants |
| V | Gross Negligence and Wanton Misconduct | Officer Beyerlein |
| VI | Gross Negligence and Wanton Misconduct | Officer Guevara |
| VII | Assault and Battery | Officer Beyerlein |
| VIII | Assault and Battery | Officer Guevara |

*See id.*

Although most Defendants filed Answers; *see* ECF Nos. 24 (City of Saginaw); 29 (Halverson); 34 (Adams, Beyerlein, Carpus, Englehart, Guevara, Holden, Lopez, Ward); 36 (Teneyuque); 39 (Roberts), Defendants Oswald, Atha, and Myers filed a joint motion to dismiss under Civil Rule 12(b)(6) arguing that Plaintiff has not plausibly pleaded a failure-to-intervene claim against them. ECF No. 23 at PageID.89–91. Oswald, Atha, and Myers, also argue they are entitled to qualified immunity. *Id.* at PageID.91–92.

## II.

Under Civil Rule 12(b)(6), a pleading fails to state a claim if it does not contain allegations that support recovery under any recognizable theory. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When considering a Rule 12(b)(6) dismissal, the court is required to accept all factual allegations of the complaint as true and construe the pleading in favor of the nonmovant. *See Lambert v.*

---

[3] Although Plaintiff labels Count III as a Fourteenth Amendment claim, ECF No. 1 at PageID.11, it is only cognizable under the *Fourth* Amendment. *See* Section III.A.2.a.
[4] Although Plaintiff labels Count IV as a Fourteenth Amendment claim, ECF No. 1 at PageID.12 it is only cognizable under the *Fourth* Amendment. *See* Section III.A.2.a.

*Hartman*, 517 F.3d 433, 439 (6th Cir. 2008). The plaintiff need not provide "detailed factual allegations" to survive dismissal, but the "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In essence, the plaintiff's complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," but the court need not accept as true the complaint's legal conclusions. *Iqbal*, 556 U.S. at 678–79 (quotations and citation omitted). If exhibits are attached to the complaint, courts may consider such exhibits when "resolving [a] Rule 12(b)(6) motion without converting the motion to dismiss into a Rule 56 motion for summary judgment." *In re Omnicare, Inc. Sec. Litig.*, 769 F.3d 455, 466 (6th Cir. 2014).

## III.

Defendants Oswald, Atha, and Myers argue that Plaintiff has not stated a valid failure-to-intervene claim against them and, in the alternative, assert they are entitled to qualified immunity. *See* ECF No. 23. Plaintiff disagrees, and additionally argues that Oswald, Atha, and Myers focused only on Count III of his Complaint, ignoring Count IV which additionally alleged these Defendants were liable under the Fourteenth Amendment for their "failure to supervise and train." *See* ECF Nos. 30 at PageID.208–12; 1 at PageID.12–13. On this latter point, Oswald, Atha, and Myer reply that Count IV is only properly pleaded against Defendant City of Saginaw as a *Monell* municipality claim. ECF No. 32 at PageID.221–23. And, even if Plaintiff intended to plead Count IV against all Officer Defendants, Oswald, Atha, and Myer reply that Plaintiff has not stated a valid "failure to train and supervise" claim against them, specifically. *Id.* Each Count will be discussed in turn.

**A. Count III: Failure to Intervene**

While Count I alleges Officers Beyerlein and Guevara employed excessive force by shooting Plaintiff on August 5, 2021, in violation of the Fourth Amendment, Count III, alleges that "one or more" of the other Officer Defendants "observed or had reason to know that such violations were occurring and did not intervene to try to stop such violations despite having a reasonable opportunity [and means] to do so," in violation of the Fourteenth Amendment and 42 U.S.C. § 1983. ECF No. 1 at PageID.12–13.

**1. Legal Principles**

Under 42 U.S.C. § 1983, a plaintiff may sue any "person" who, under the color of state law, subjects any citizen to the deprivation of any rights, privileges, or immunities secured by the Constitution *See* 42 U.S.C. § 1983. Accordingly, to prevail on a § 1983 claim, a plaintiff must prove that (1) someone acting "under the color of state law" (2) deprived them of a Constitutional rights. *Winkler v. Madison Cnty.*, 893 F.3d 877, 890 (6th Cir. 2018); *Shadrick v. Hopkins Cnty.*, 805 F.3d 724, 736 (6th Cir. 2015); *see also Jones v. Muskegon Cnty.* 625 F.3d 935, 941 (6th Cir. 2015).

Moreover, when a plaintiff pursues a § 1983 claim against an individual government official, the doctrine of qualified immunity shields the individual defendants from liability if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Getz v. Swoap*, 833 F.3d 646, 652 (6th Cir. 2016) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). When analyzing qualified immunity, courts apply the "*Saucier* two step," asking (1) whether a constitutional right has been violated; and (2) whether that right was clearly established—though reviewing courts need not proceed in this order. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009) ("[W]hile the sequence set forth [in *Saucier*] is

- 7 -

often appropriate, it should no longer be treated as mandatory."). The latter "clearly established" prong analyzes whether it was sufficiently clear that a reasonable officer would understand their actions violate a right. *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (citing *Reichle v. Howards*, 566 U.S. 658 (2012)).

Accordingly, this Court will first analyze whether Plaintiff properly pleaded a failure-to-intervene claim, and then will turn to analyze whether Defendants Oswald, Atha, and Myers are entitled to qualified immunity.

### 2. Constitutional Violation

#### a.

As a threshold matter, "Plaintiff's § 1983 failure-to-intervene claim (alleged in both Counts III and IV) is not cognizable under the Fourteenth Amendment. Excessive force claims—including failure to intervene claims—"can be raised under the Fourth, Eighth, and Fourteenth Amendments," depending on "the status of the plaintiff at the time of the incident[.]" *Burgess v. Fischer*, 735 F.3d 462, 472 (6th Cir. 2013). If the plaintiff is a free citizen, the Fourth Amendment's prohibition against unreasonable searches and seizures applies. *Id.* If the plaintiff is convicted or in federal custody, the Eighth Amendment's ban on cruel and unusual punishment applies. *Id.* And, if the plaintiff "does not clearly fall within either category," like pretrial detainees, the "Fourteenth Amendment's more generally applicable Due Process Clause governs to bar a government official's excessive use of force." *Id.* More than mere semantics, this distinction may be dispositive, as each amendment presents different evidentiary hurdles. *Id.* ("A plaintiff has a substantial higher hurdle to overcome to make a showing of excessive force under the Fourteenth Amendment as opposed to the Fourth Amendment.")

Here, nothing in Plaintiff's Complaint suggests that he was anything other than a free citizen at the time of the August 5, 2021 search of the South Harrison House. *See* ECF No. 1. Indeed, Plaintiff pleads Counts I and II—alleging Officer Defendants Beyerlein and Guevara employed excessive force by shooting Plaintiff, and Saginaw County's municipality liability— under the Fourth Amendment, but does not explain why he pleads Counts III and IV, alleging a *different theory* of liability for the *same use of force*, under an entirely separate constitutional framework. Accordingly, Counts III and IV will be construed to assert claims under the Fourth— rather than the Fourteenth—Amendment.

**b.**

When assessing whether force is excessive in violation of the Fourth Amendment, Courts employ an "objective reasonableness" standard. *Barton v. Martin*, 949 F.3d 938, 952 (6th Cir. 2020). This fact-specific, totality-of-the-circumstances inquiry requires balancing the harm or consequences from the force against the government's interest in employing it. *Baynes v. Cleland*, 799 F.3d 600, 607 (6th Cir. 2015) (citing *Graham v. Connor*, 490 U.S. 386, 396–97 (1989)). "Despite the 'balancing' that occurs within this test, the scales are set in favor of the police." Bryan Borodkin, *Officer-Created Jeopardy and Reasonableness Reform: Rebuttable Presumption of Unreasonableness Within 42 U.S.C. S 1983 Police Use of Force Claims*, 55 U. Mich. J.L. Reform 919, 936 (2022) (highlighting problems, from both the public and police perspective, with the "objective reasonableness" standard in police use-of-force claims, and suggesting reforming the standard in situations of officer-created jeopardy). Courts pay "particular attention" to (1) the severity of the crime at issue; (2) whether the individual subject to the force poses an immediate threat to the safety of officers or others; and (3) whether the individual is actively resisting arrest or evading officers. *Baynes*, 799 F.3d at 607 (6th Cir. 2015). Moreover, courts determine whether

the officer's use of force was constitutional from the perspective of another reasonable officer on the scene, at the time the force is used, "rather than with the 20/20 vision of hindsight." *Id.* at 607–08 (quoting *Morrison v. Bd. Of Trustees Of Green Twp.*, 583 F.3d 394, 401 (6th Cir. 2009) and *Graham v. Connor*, 490 U.S. 386, 396 (1989)).

But, "[i]n some cases, officers can be liable for a Fourth Amendment excessive force violation when they were not the ones who actively struck"—or, in this case, shot—"the plaintiff." *Goodwin v. City of Painesville*, 781 F.3d 314, 328 (6th Cir. 2015). To succeed on a failure-to-intervene claim, a plaintiff must prove that the officer defendant (1) observed or had reason to know that excessive force would or was being used; and (2) had both the opportunity and the means to prevent the harm from occurring. *Id.*; *see also Chaney-Snell v. Young*, 98 F.4th 699, 721 (6th Cir. 2024); *Burgess v. Fischer*, 735 F.3d 462, 475 (6th Cir. 2013) (noting an officer defendant's "mere presence" at a scene during another officer's use of force "cannot suffice to subject them to liability" absent "a showing of some direct responsibility").

Here, assuming *arguendo* that Officer Defendants Beyerlein and Guevara employed excessive force against Plaintiff by shooting him collectively six times, Plaintiff has not sufficiently pleaded that Officer Defendants Oswald, Myers, and Atha failed to intervene or stop this shooting. True, as pleaded in Plaintiff's Complaint, all Officer Defendants entered the South Harrison House before Beyerlein and Guevara shot Plaintiff. ECF No. 1 at PageID.7. So it is plausible that all Officer Defendants *observed* the shooting. But nothing in Plaintiff's Complaint plausibly suggests that any Officer Defendant had the *opportunity or means* to stop the shooting. Plaintiff himself describes the August 5, 2021 search and shooting as "lighting-quick," and specifically alleges that an unidentified Officer Defendant "immediately" threw a flash grenade into the South Harrison House upon arrival at around 6:30 AM, and that Officer Defendants

- 10 -

Beyerlein and Guevara shot Plaintiff "within a few seconds of the flash bang grenade detonating." ECF No. 1 at PageID.7–8; *see also* ECF No. 30 at PageID.206. The force occurred far too quickly for Oswald, Atha, and Myers to intervene. *See Chaney-Snell*, 98 F.4th at 722 (noting "an officer without forewarning generally will not have the ability to stop a colleague's force if the force continues for 'ten seconds or less'" and accordingly "could not face liability for a colleague's decision to . . . shoot a suspect when this force ended in seconds" (quoting *Pineda v. Hamilton Cnty.*, 977 F.3d 483, 493 (6th Cir. 2020))); *see also Alexander v. Carter for Byrd*, 733 F. App'x 256, 265 (6th Cir. 2018) ("This Court has held that an excessive use of force lasting ten seconds or less does not give a defendant 'enough time to perceive the incident and intervene' to stop such force." (quoting *Burgess v. Fischer*, 735 F.3d 462, 476 (6th Cir. 2013))).

Plaintiff does not argue to the contrary. ECF No. 30 at PageID.210 ("The undersigned agrees once Defendants[] detonated the flash bang and began shooting Plaintiff . . . there was not much of an opportunity to intervene."). Instead, Plaintiff argues "the opportunity to intervene came in the *hours* and *days* before the execution of" the August 5, 2021 search, because Officer Defendants Myers, Oswald, and Atha—like all Officer Defendants—were "part of a swat team that pre-planned a no-knock raid that would employ the use of a flash bang grenade and military style weapons" but "did not participate in any surveillance of the house in question in the forty-eight hours before the no-knock warrant was executed." *Id.* at PageID.206, 209. But Plaintiff provides no caselaw in support of the proposition that an officer can be liable for another officer's shooting simply because both were members of the same "swat team," and did not sufficiently surveil the place to be searched.[5] *See id.* at PageID.208–11. In addition to its lack of precedential

---

[5] Three months after responding to Defendants Oswald, Myers, and Atha's joint Motion to Dismiss, ECF No. 23, Plaintiff filed a Motion for Leave to File a Supplemental Brief, ECF No. 41, and suggested that *Krause v. Jones*, 765 F.3d 675 (6th Cir. 2014) provides "clear authority that

support, Plaintiff's argument is somewhat self-defeating. An officer's alleged *failure* to surveil a house before a search cannot plausibly provide them with *reason to know* that another officer would use excessive force during the subsequent search.

---

. . . planners may be liable under Section 1983 to the extent that a plan for a search or seizure, as formulated and approved by those defendants, provides for and results in an unconstitutionally excessive use of force." ECF No. 41 at PageID.378. But Plaintiff interprets *Krause* far too broadly.

In *Krause,* marshals arrived at Matthew Krause's house in December 2008 to arrest him, pursuant to a warrant, for felony possession of cocaine. *Krause*, 765 F.3d at 677. Upon seeing the marshals, Krause retreated into a corner of his bedroom and aimed a firearm at the bedroom door, and any marshals who tried to enter. *Id.* Krause told officers he had "multiple guns in the bedroom and would kill anyone who tried to come in." *Id.* In response, the marshals called the Redford Township Police Department, who sent a SWAT team to the house. *Id.* After eight hours of negotiation, when Krause was seemingly asleep, the SWAT team decided to deploy a flash bang into Krause's bedroom and apprehend him. *Id.* at 677–78. But, as the flash bang detonated, Krause shot at the officers, who in turn shot Krause twenty times, killing him. *Id.* at 678. Krause's mother sued the officers who used force, as well as applicable municipalities. *Id.* The district court granted all defendants summary judgment, finding each was entitled to qualified immunity. *Id.* The Sixth Circuit *affirmed* and held that the defendants did not violate Krause's Fourth Amendment rights in the first instance, noting that the officer's actions in both employing a flash bang and using deadly force were objectively reasonable under the circumstances. *Id.* at 678–81.

Plaintiff ignores this majority holding and points instead to Judge Marbley's *partial concurrence* which, unlike the majority, held that the shooting officer did not act reasonably by shooting Krause twenty times. *Id.* at 682 (Marbley, J., concurring in part). In Judge Marbley's view, the majority "ignore[d] any consideration of the decisions—and reasonableness thereof—made by police in the run up" to entering Krause's bedroom. *Id.* Judge Marbley reasoned that the officers could have—but decided not to—wait longer, apprehend Krause while he was sleeping; or fire fewer shots at him; and that all three of these options would have been more objectively reasonable under the circumstances. *Id.* at 683.

Plaintiff argues that *Krause* requires this Court to consider the Officer Defendants' pre-seizure conduct in analyzing the reasonableness of their use of force. *See* ECF No. 41 at PageID.378. It does not. Indeed, nothing in *Krause*—even Judge Marbley's partial concurrence—discusses the general relevance of pre-seizure conduct when analyzing a *failure to intervene claim*. And even if this Court considered the scant factual allegations Plaintiff has presented concerning the Officer Defendants' pre-seizure conduct (that all officers were part of the same team which planned to use a flash bang and enter the South Harrison House armed with weapons), these factual allegations do not plausibly show Officers Oswald, Myers, and Atha *knew* that Plaintiff would be shot, nor *had the opportunity and means* to prevent the shooting from occurring.

In sum, Plaintiff alleges that Officer Defendants Beyerlein and Guevara employed excessive force by collectively shooting Plaintiff six times during the August 5, 2021 search of the South Harrison House. But Plaintiff does not plausibly allege that Officer Defendants Myers, Oswald, and Atha—although present in the South Harrison House—had the opportunity or means to prevent the "lighting-quick," "immediate" shooting that occurred within "a few seconds" of the Officer Defendants' entrance.[6] Thus, Plaintiff's failure-to-intervene claim against these Defendants will be dismissed.

### 3. Qualified Immunity

In the alternative, even if Plaintiff had sufficiently pleaded that Myers, Oswald, and Atha failed to intervene, depriving him of his Fourth Amendment rights in violation of 42 U.S.C. § 1983, these Officer Defendants would still be dismissed because each is entitled to qualified immunity.

Where, as here, a defendant raises a qualified-immunity defense, ECF No. 23 at PageID.91–92, the plaintiff bears the burden of demonstrating that the defendant is not entitled to qualified immunity. *See Hart v. Hillsdale Cnty.*, 973 F.3d 627, 635 (6th Cir. 2020); *Livermore ex rel Rohm v. Lubelan*, 476 F.3d 397, 403 (6th Cir. 2007). As explained *supra* Section III.A.1, an officer is entitled to qualified immunity if their actions do not violate "clearly established" law. *See Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (discussing *Saucier v. Katz*, 533 U.S. 194, 121 (2001)); *Getz v. Swoop*, 833 F.3d 646, 652 (6th Cir. 2016). While there need not be a case directly on point for law to be "clearly established," existing precedent must place the constitutional question "beyond debate." *Mullenix v. Luna*, 577 U.S. 7, 14 (2015); *Ashcroft v. al-Kidd*, 563 U.S.

---

[6] Notably, this same conclusion likely applies to Officer Defendants (1) Lopez; (2) Teneyuque; (3) Adams; (4) Holden; (5) Halverson; (6) Carpus; (7) Englehart; (8) Ward; and (9) Roberts—none of whom filed a motion to dismiss.

731, 741 (2011). Sources of "clearly established law" include, from most to least persuasive, Supreme Court precedent, controlling Sixth Circuit precedent, this Court's precedent, or a "robust consensus of cases of persuasive authority." *See Sutton v. Metro. Gov't of Nashville & Davidson Cnty.*, 700 F.3d 865, 876 (6th Cir. 2012); *Ashcroft*, 563 U.S. at 742.

Plaintiff has not met his burden in showing Myers, Oswald, and Atha violated clearly established law. In response to Myers, Oswald, and Atha's argument that they are entitled to qualified immunity, Plaintiff argues only:

> Defendants again miss the point in their analysis. They state "the question 'is whether a reasonable officer in [the defendant officer's] position would have been on notice of a duty to intercede.'" *Barton v City of Lincoln Park*, 726 F App'x 361, 367 (6 Cir 2018) As stated above, the duty to intercede was incumbent upon all the Defendants in the hours and days during the planning process and execution of the raid in question.

ECF No. 30 at PageID.211. But Plaintiff cites *no caselaw* in support of his proposition that "the duty to intercede was incumbent upon all Defendants in the hours and days during the planning process and execution of" the August 5, 2021 search. *See generally* ECF No. 30. And, on these facts, no "clearly established" caselaw is apparent to this Court. As alleged in Plaintiff's Complaint, Officer Defendants Myers, Oswald, and Atha were merely present at the South Harrison House on August 5, 2021 when Officers Beyerlein and Guevara collectively shot Plaintiff six times at "lightning quick" speed, "a few seconds" after the Officer Defendant entered the House. *See generally* ECF No. 1. Even if Plaintiff plausibly alleged these Defendants violated the Fourth Amendment by failing to intervene on these facts, their alleged failure to intervene does not violate clearly established law.

- 14 -

**B. Count IV: Failure to Train and Supervise**

In Count IV, Plaintiff broadly alleges that the Officer Defendants' failure to intervene was caused by all Defendants' failure "train and supervise," in violation of the Fourth Amendment.[7] ECF No. 1 at PageID.12–13. Although one may interpret Count IV as pleading a "failure to train and supervise" claim against only the City of Saginaw—a common theory to hold municipalities liable for violations of 42 U.S.C. § 1983 under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978), *City of Canton v. Harris*, 489 U.S. 378, 388 (1989), Plaintiff insists Count IV is *not* a *Monell* claim but, rather, is separately pleaded against each and every Defendant. ECF No. 30 at PageID.212. Accordingly, Plaintiff maintains that Officer Defendants Oswald, Myers, and Atha are liable under Count IV, and argues these Officer Defendants erred in not addressing Count IV in their motion to dismiss. *Id.*

Not so. For starters, Count IV reads like a *Monell* claim, and recites municipal liability law. *Compare* ECF No. 1 at PageID.12–13 (alleging Defendants "tolerated, ratified, and were deliberately indifferent to" the alleged failure to intervene, were on notice of a "clear need for more and/or different training, supervision, investigation and/or discipline," and that this caused Plaintiff's injuries) *with Ellis ex rel. Pendergrass v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 700 (6th Cir. 2006) (noting a municipality is liable under *Monell* for § 1983 violations when plaintiff proves "(1) the training or supervision was inadequate for the tasks performed; (2) the inadequacy was the result of the municipality's deliberate indifference; and (3) the inadequacy was closely related to or actually caused the injury") *and Victor v. Reynolds*, 582 F. Supp. 3d 516, 522 (E.D. Mich. 2022) (noting deliberate indifference may be satisfied when Plaintiff shows that the

---

[7] Plaintiff asserts Count IV under the Fourteenth Amendment, ECF No. 1 at PageID.12, but, as explained in *supra* Section III.A.2.a, the claim is properly construed under the Fourth Amendment, given Plaintiff's status as a free citizen at the time of the August 5, 2021 search.

municipality was on notice of a need for better training). Indeed, Plaintiff does not cite any cases where *individual* officers can be held liable under § 1983 for their failure to train or supervise other *individual* officers. *See generally* ECF Nos. 1; 30.

Second, and most importantly, Plaintiff's Complaint is wholly devoid of any factual allegations concerning the employment relationships among and between each Officer Defendant. Did Officer Defendants Oswald, Myers, and Atha supervise other Officer Defendants? Did they supervise *anyone*? Did they have *any responsibility* to train other Officer Defendants? Plaintiff's Complaint does not say. *See generally* ECF No. 1. Plaintiff's Complaint alleges only that each Officer Defendant was employed by Defendant City of Saginaw—further suggesting Count IV was meant to be pleaded as a *Monell* claim against only this municipal Defendant.[8] *See id.* at PageID.2–5. Regardless, to the extent Plaintiff attempts to hold all individual Officer Defendants liable under Count IV for their alleged "failure to train and supervise" other individual Officer Defendants, this Count will be dismissed as it relates to Oswald, Myers, and Atha because Plaintiff provides no factual allegations which plausibly show these Defendants had a duty to supervise or

---

[8]   Although Plaintiff pleads, in his Complaint, that all Officer Defendants were employed by Defendant City of Saginaw, ECF No. 1 at PageID.3–6, Plaintiff later suggests that the 14 Officer Defendants were employed by "five different municipalities" when they searched the South Harrison House on August 5, 2021. ECF No. 30 at PageID.206. And several Officer Defendants aver they were not employed by Defendant City of Saginaw. Defendants Beyerlein, Guevara, Lopez, Adams, Holden, Carpus, Englehart, and Ward assert—in their joint Answer—that *only* Beyerlein, Guevara, Lopez, Adams, Holden, Carpus, and Englehart were Saginaw police officers and that all other Officer Defendants "are members of the Emergency Services Team employed by different law enforcement agencies." ECF No. 34 at PageID.275. Defendant Teneyuque also denies that he was employed by the City of Saginaw, explaining he was acting in his capacity as a Buena Vista Charter Township police officer on August 5, 2021. ECF No. 36 at PageID.300. Both Defendant Roberts and Halverson also deny working for the City of Saginaw.  ECF Nos. 39 at PageID.331–32; 29 at PageID.180, 183.

train anyone, let alone any of the other Officer Defendants present at the South Harrison House on

August 5, 2021.[9]

## IV.

Accordingly, Defendants Matthew Oswald, Andrew Myers, and Jarrod Atha's joint Motion

to Dismiss, ECF No. 23, is **GRANTED.**

Further, it is **ORDERED** that all claims against Defendants Matthew Oswald, Andrew

Myers, and Jarrod Atha are **DISMISSED WITH PREJUDICE.**

Dated: June 27, 2024                         s/Thomas L. Ludington
                                             THOMAS L. LUDINGTON
                                             United States District Judge

---

[9] This conclusion likely applies to all other Officer Defendants—(1) Lopez; (2) Teneyuque; (3) Adams; (4) Holden; (5) Halverson; (6) Carpus; (7) Englehart; (8) Ward; and (9) Roberts—none of whom filed a motion to dismiss.